UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
JSMS RURAL LP,                                        :
                                                      :
                         Plaintiff,                   :
                                                      :       OPINION AND ORDER
         -against-                                    :
                                                      :
GMG CAPITAL PARTNERS III, LP, and                     :       04 Civ. 8591 (SAS)
GMG CAPITAL INVESTMENTS, LLC,                         :
                                                      :
                         Defendants.                  :
                                                      :
------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

　　　　Plaintiff JSMS Rural LP ("JSMS") alleges that defendants GMG Capital Partners III LP (the "Partnership") and GMG Capital Investments LLC (the "General Partner") (collectively, "defendants") defrauded JSMS in violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission. JSMS also brings claims of fraud and negligent misrepresentation under New York law. Defendants now move for summary judgment on all claims asserted against them. For the following reasons, defendants' motion is granted as to the federal securities fraud claim. Furthermore, I decline to exercise supplemental

jurisdiction over plaintiff's remaining state law claims.

## II. BACKGROUND

### A. The Parties

The Partnership, organized under Delaware law with a principal office in New York City, is a private equity firm that invests in a number of early-stage technology companies (the "Portfolio Companies").[1] At the time of plaintiff's investment, the Partnership held positions in nine Portfolio Companies.[2] The Partnership raises funds by selling limited partnership interests to investors.[3] The General Partner manages the Partnership and directs the investment of Partnership assets.[4] Limited partners are not involved in the management of the Partnership.[5]

Plaintiff JSMS is a limited partnership formed under New York law.[6]

---

[1] *See* Second Amended Complaint ("Compl.") ¶ 3.

[2] *See* Defendants' Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Def. 56.1") ¶ 18.

[3] *See* Compl. ¶ 9.

[4] *See id.* ¶ 10.

[5] *See id.*

[6] *See id.* ¶ 2.

The principal and general partner of JSMS is Jack Schwartz.[7] Schwartz, an experienced investor in equity funds, manages five to ten limited partnerships, and is the president of a $150 million shoe company.[8]

### B. The Alleged Scheme[9]

Beginning in January 2003, the defendants sought to raise between $125 and $200 million.[10] To that end, the Partnership distributed a Private Placement Memorandum dated February 2003 (the "PPM") to solicit investors to become limited partners.[11]

In the summer of 2003, defendants invited JSMS to become a limited partner in the Partnership.[12] At the time defendants solicited JSMS's investment,

---

[7] *See id.* ¶ 22.

[8] *See* Def. 56.1 ¶ 2 (citation omitted).

[9] The facts set forth in this section are undisputed unless otherwise noted, and are presented in the light most favorable to plaintiff. *See, e.g., Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006) (on summary judgment, court construes evidence in light most favorable to non-moving party).

[10] *See* Compl. ¶ 14.

[11] *See id.* ¶ 22; *see also* GMG Capital Partners III, L.P. Confidential Private Placement Memorandum ("PPM"), Exhibit D to 5/2/06 Declaration of Kyle C. Bisceglie, counsel for defendants ("Bisceglie Decl.").

[12] *See* Def. 56.1 ¶¶ 7-9; *see also* Compl. ¶¶ 21-24.

-3-

the Partnership's 2002 audited financial statement was unavailable.[13] In July or August 2003, Schwartz met with several principals of the General Partner.[14] At this meeting, Schwartz was given a copy of the PPM.[15] Relying in large part on the representations made in the PPM, JSMS invested $2 million in the Partnership in late August 2003, and accordingly became a limited partner.[16] The Limited Partnership Agreement signed by JSMS provides, among other things, that its interest in the Partnership cannot be assigned without the prior written consent of the General Partner, which can be arbitrarily withheld.[17]

In July 2004, the General Partner provided JSMS with a copy of the

---

[13] *See* Compl. ¶ 24.

[14] *See* Def. 56.1 ¶ 8 (citation omitted).

[15] *See id.* ¶ 9.

[16] *See* Compl. ¶ 27. Plaintiff further asserts that "at the meeting in New York in the summer of 2003, [GMG] pushed JSMS to invest in the Partnership quickly and without an opportunity for due deliberation." *Id.* ¶ 26. The rush was because one of the Portfolio Companies, CancerVax, was about to conduct an initial public offering ("IPO"), and JSMS could only reap the profits from that IPO if it invested immediately. *See id.* According to plaintiff, the CancerVax IPO resulted in a large loss for the Partnership. *See id.* ¶ 29.

[17] *See* Second Amended and Restated Limited Partnership Agreement § 6.2, Exhibit E to 4/27/06 Affidavit of Jeffrey S. Boxer, counsel for plaintiff.

Partnership's audited 2002 financial statement.[18] As discussed further below, JSMS alleges that these financial statements revealed that the PPM had materially overstated the past performance of the Partnership – in particular, of Alloptic, Inc. ("Alloptic"), the Partnership's largest single investment.

### C. Alleged Misstatements and Omissions Concerning Alloptic

Alloptic was and is one of the Portfolio Companies, as well as the Partnership's largest holding.[19] Founded in 1998, it develops, produces and markets passive optical networking equipment for telecommunication and cable television networks.[20] The PPM's "Summary of Financing" for Alloptic provided information about five financing rounds that had closed as of February 2003, including, but not limited to, the closing date, funding amount, post money valuation, the number of shares offered and the price per share with respect to each round.[21]

JSMS now identifies a number of alleged misrepresentations and

---

[18] *See* Def. 56.1 ¶ 53. This audit was conducted by PricewaterhouseCoopers. *See* GMG Capital Partners III, L.P. Financial Statements, December 31, 2002 at 1, Ex. L to Bisceglie Decl. at JS00453.

[19] *See* Compl. ¶ 33.

[20] *See* Def. 56.1 ¶ 27.

[21] *See id.* ¶ 29 (citation omitted).

-5-

material omissions concerning Alloptic made in the PPM. Among other things, plaintiff charges that the PPM misrepresented: the Partnership's true ownership stake in Alloptic; Alloptic's actual revenue in 2002 and projected revenue for future years; the fact that Alloptic's valuation as of 2002 dropped precipitously from what was represented in the PPM; Alloptic's substantial losses; and the amount of bridge financing extended by the Partnership to keep Alloptic afloat.[22]

### D. Cautionary Statements in the PPM

Defendants point to a number of cautionary statements in the PPM. For instance, the preface warned: "THE INVESTMENTS IN THE PARTNERSHIP ARE SPECULATIVE, ILLIQUID AND INVOLVE A HIGH DEGREE OF RISK (SEE 'INVESTOR CONSIDERATIONS — RISK FACTORS')."[23] In addition, a section entitled "Lack of Liquidity of Certain Investments" warned: "An investment in the Partnership is suitable only for an investor that does not need liquidity in his or her investment, can accept volatility in his or its investment, and can sustain a total loss of his or its investment in the

---

[22]  *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion For Summary Judgment Pursuant to Fed. R. Civ. P. 56 ("Pl. Mem.") at 11; *see also* Compl. ¶¶ 32-49.

[23]  PPM at ii (emphasis in original).

-6-

Partnership."[24]

## III. LEGAL STANDARD

### A. Standard of Review

Summary judgment is appropriate if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[25] "A genuine factual issue derives from the 'evidence [being] such that a reasonable jury could return a verdict for the nonmoving party.'"[26] A fact is material when it "might affect the outcome of the suit under the governing law."[27] The movant has the burden of demonstrating that no genuine issue of material fact exists.[28]

In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. To do so, it must do more than

---

[24] *Id.* at 44.

[25] Fed. R. Civ. P. 56(c).

[26] *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).

[27] *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting *Anderson*, 477 U.S. at 248).

[28] *See id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

-7-

show that there is a "'metaphysical doubt as to the material facts,'"[29] and it "'may not rely on conclusory allegations or unsubstantiated speculation.'"[30] In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor.[31]

**B. Section 10(b) and Rule 10b-5**

To state a prima facie case for securities fraud under section 10(b) and Rule 10b-5, a plaintiff must allege that "'the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action caused injury to the plaintiff.'"[32] In particular, a plaintiff must establish *first,* that it relied upon defendant's fraudulent conduct in purchasing or selling securities

---

[29] *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[30] *Jeffreys*, 426 F.3d at 554 (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2002)).

[31] *See, e.g., Golden Pac. Bancorp v. FDIC*, 375 F.3d 196, 201 (2d Cir. 2004).

[32] *Lawrence v. Cohn*, 325 F.3d 141, 147 (2d Cir. 2003) (quoting *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000)). *Accord Dura Pharms. v. Broudo*, 544 U.S. 336, 341-42 (2005) ("*Dura*"). The requisite state of mind, or scienter, in a securities fraud action is "an intent to deceive, manipulate or defraud." *Ganino*, 228 F.3d at 168 (quotation and citation omitted).

("transaction causation" or "reliance");[33] *second*, that it suffered economic loss;[34] and *third*, that defendant's conduct caused this loss ("loss causation").[35] Section 28(a) of the Securities Exchange Act of 1994 restricts plaintiff's recovery under Section 10(b) and Rule 10b-5 to "actual damages."[36] At the same time, the Supreme Court "has never interpreted [section] 28 as imposing a rigid requirement that every recovery on an express or implied right of action under the 1934 Act must be limited to the net economic harm suffered by plaintiff."[37]

In the case of a 10b-5 action alleging a material misstatement or omission, loss causation generally requires a plaintiff to show that her investments

---

[33] *See, e.g., Lentell v. Merrill Lynch & Co.*, 396 F.3d 164, 172 (2d Cir. 2005).

[34] *See Dura*, 544 U.S. at 342 (referring to "economic loss" and "loss causation" as separate "basic elements" of a Rule 10b-5 claim).

[35] The Private Securities Litigation Reform Act of 1995 ("PSLRA") codified this requirement: "In any private action arising under this chapter, the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4).

[36] 15 U.S.C. § 78bb(a); *see also Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 155 (1972) (section 28 applies to Section 10(b) actions).

[37] *Randall v. Loftsgaarden*, 478 U.S. 647, 663 (1986) (section 28 does not entirely preclude measuring plaintiff's recovery based on defendant's gain rather than plaintiff's loss).

would not have lost value if the facts that defendants misrepresented or omitted had been known.[38] In *Lentell*, the Second Circuit explained that "a misstatement or omission is the 'proximate cause' of an investment loss if the risk that caused the loss was within the zone of risk concealed by the misrepresentations and omissions alleged by a disappointed investor."[39] Moreover, plaintiff's loss must be "foreseeable and . . . caused by the materialization of the concealed risk."[40]

## IV. DISCUSSION

### A. Rule 10b-5

Defendants attack plaintiff's Rule 10b-5 claim on several grounds, one of which hits the target.[41] While it might otherwise be possible to show *loss*

---

[38] *See, e.g., Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 96 (2d Cir. 2001).

[39] 396 F.3d at 173.

[40] *Id.*

[41] I assume *arguendo* that a reasonable jury could find that defendants made material misstatements and omissions with scienter, and that plaintiff reasonably relied on these misstatements when investing in the Partnership. I note that defendants' argument that the alleged misstatements and omissions are immaterial as a matter of law is not persuasive. Questions of materiality are "not often amenable to disposition as a matter of law," *In re eSpeed, Inc. Sec. Litig.*, No. 05 Civ. 2091, 2006 WL 880045, at *8 (S.D.N.Y. Apr. 3, 2006), because "the determination requires delicate assessments of the inferences a reasonable shareholder would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly one for the trier of fact." *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 450 (1976).

*causation* in this case,[42] plaintiff has neglected to indicate exactly how it suffered a *loss*. And once the party moving for summary judgment meets its burden to show a lack of a genuine issue of material fact, "[t]he time has come [for the non-movant] 'to put up or shut up.'"[43] Here, the record is devoid of evidence that the value of JSMS' partnership interest has actually declined, whether as a result of defendants' alleged conduct or otherwise. Thus, plaintiff's Rule 10b-5 claim fails as a matter of law.

Plaintiff asserts in conclusory fashion that its partnership interest is now "worthless."[44] This assertion is illogical on its face. Alloptic is only one of the Partnership's nine Portfolio Companies, comprising less than thirty percent of the Partnership's holdings.[45] Defendants correctly note that if Alloptic went bust

---

[42] In essence, JSMS asserts that the PPM concealed the true value of Alloptic, causing plaintiff to pay an inflated price for its Partnership interest. Then, several months after JSMS made its investment, defendants released a corrective disclosure, the audited 2002 financial statements, which revealed that the PPM had overvalued Alloptic. Putting to one side plaintiff's failure to provide evidence of any economic loss, plaintiff has raised a triable fact issue as to loss causation. *See Lentell*, 396 F.3d at 173; *Suez Equity*, 250 F.3d at 97-98.

[43] *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (quoting Fleming James, Jr. & Geoffrey C. Hazard, Jr., Civil Procedure 150 (2d ed. 1977)).

[44] Pl. Mem. at 21-22; *see also id.* at 18 n.9.

[45] *See* Expert Witness Report of S. David Belsky, expert for plaintiff, at 3 n.1 ("Belsky Report"), Ex. N to Bisceglie Decl.

tomorrow, the Partnership's interest in the other eight companies would still retain some value.[46] In fact, in the absence of evidence that plaintiff's investment in the Partnership has lost value, plaintiff cannot recover any damages unless it is able to fix the loss of value attributable to defendants' alleged fraud with reasonable certainty.[47]

Plaintiff nonetheless requests that it "be allowed to prove out-of-pocket damages at trial," contending that "[t]he documents provided by defendants in this action including thos[e] submitted in opposition to this motion make clear that JSMS' interest in GMG is worthless given the decline in its assets and the fact

---

[46] *See* Defendants' Memorandum of Law in Support of Their Motion For Summary Judgment Pursuant to Fed. R. Civ. P. 56 at 14-15 ("Alloptic was only one of about ten high risk, start-up technology companies comprising GMG's venture capital portfolio. No reasonable investor would assume that all of these companies will prove to be profitable investments for GMG Partners. GMG Partners may generate substantial returns for its limited partners, such as JSMS, even if some of the Portfolio Companies ultimately fail."). Indeed, the Partnership sometimes achieves good results: a Portfolio Company known as Chaparral was acquired by another company in February 2004, resulting in a "strong return on invested capital [for the Partnership] ($12.4 million return on $5.0 million invested)." 8/16/04 Letter from Joachim Gfoeller, Managing General Partner of the Partnership, to Limited Partners at 5, Ex. K to Bisceglie Decl.

[47] *See Commercial Union Assurance Co. v. Milken*, 17 F.3d 608, 614-15 (2d Cir. 1994) (when Rule 10b-5 plaintiffs had already recovered 114% of their investment in fraudulent partnership, court did not allow recovery of *additional* amounts the partnership would have earned absent the fraud, as such "benefit-of-the-bargain" damages could not be calculated with reasonable certainty, and given that plaintiffs suffered no out-of-pocket losses).

-12-

that JSMS [cannot] now sell its interest under the Limited Partnership Agreement."[48] The documents provided to the Court as part of this motion show no such thing. While there is sufficient evidence from which a reasonable jury could conclude that the value of *Alloptic* turned out to be lower than what was represented in the PPM at the time plaintiff invested, there is no evidence concerning whether JSMS' interest in the *Partnership* has lost value at all, much less as a result of defendants' misrepresentations.[49] Moreover, the non-transferability of JSMS' partnership interest does not by itself constitute a decline in value, as it was clearly disclosed *at the time JSMS invested* that it could not make any such transfer without defendants' consent.[50]

Plaintiff also contends that "JSMS does not have to calculate out-of-pocket damages . . . to recover on its Rule 10b-5 claim because JSMS is seeking

---

[48] Pl. Mem. at 18 n.9.

[49] For example, plaintiff's expert report, submitted as part of *defendant's* motion papers, confines itself to a discussion of Alloptic's troubles, and of the expert's opinion as to whether defendants' omissions concerning Alloptic were material. See Belsky Report at 3-6. Similarly, plaintiff points to the Partnership's audited 2002 financial statements to show that Alloptic's value declined, *see* Pl. Mem. at 8-9 (citation omitted), but does not explain how these financial statements demonstrate a decline in the value of plaintiff's Partnership interest.

[50] *See supra* note 17 and accompanying text.

rescission of the transaction."[51] This is a non-sequitur. Regardless of whether rescission might be an appropriate *remedy* in this case, plaintiff must still prove all elements of its Rule 10b-5 claim, including that it suffered an economic loss caused by defendant's alleged misconduct.

Indeed, plaintiff's failure to offer any such evidence calls into question whether rescission would be an appropriate remedy here. Courts have cautiously endorsed rescission as a possible remedy for some Rule 10b-5 violations.[52] But Rule 10b-5 is not intended to provide investors with a "partial downside insurance policy."[53] Plaintiff has provided no evidence concerning the extent to which its partnership interest has lost value, nor has it provided any method by which a factfinder could determine what portion of such loss is attributable to defendants' fraud. Under these circumstances, permitting rescission

---

[51] Pl. Mem. at 14.

[52] *See Randall*, 478 U.S. at 662 (quotation and citation omitted) ("there is authority for allowing the § 10(b) plaintiff, at least in some circumstances, to choose between undoing the bargain (when events since the transaction have not made rescission impossible) or holding the defendant to the bargain by requiring him to pay out-of-pocket damages"); *see also Levine v. Seilon, Inc.*, 439 F.2d 328, 334 (2d Cir. 1971); *Panos v. Island Gem Enters.*, 880 F. Supp. 169, 176 (S.D.N.Y. 1995) (noting availability of rescission in some circumstances).

[53] *Dura*, 544 U.S. at 348. *Accord Basic Inc. v. Levinson*, 485 U.S. 224, 252 (1988) (White, J., concurring in part and dissenting in part) (Rule 10b-5 is not a "scheme of investor's insurance").

would almost certainly compensate JSMS for losses suffered for reasons *other than* the alleged fraud.[54] For exactly this reason, rescission is often disfavored as a Rule 10b-5 remedy.[55]

**B.    Supplemental Jurisdiction**

Where a complaint pleads both federal and state law claims, "the district court may decline to exercise supplemental jurisdiction" over state claims if "the district court has dismissed all claims over which it has original jurisdiction."[56] Although invocation of section 1367(c) is discretionary, "in the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine – judicial

---

[54]    For example, any loss to plaintiff attributable to the disappointing CancerVax IPO, *see supra* note 16, has nothing to do with the alleged fraud and thus cannot properly be recovered in this action. But if JSMS obtained rescission here, it would recapture any value its Partnership interest lost because of the decline in value of its CancerVax investment.

[55]    *See Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 250 (3d Cir. 2001) (quotation and citation omitted) (rescission remedy in 10b-5 action has "conceptual shortcomings" because "this court has expressed clear disapproval of a damage theory that would insure defrauded buyers against downside market risk unrelated to the fraud"); *see also Huddleston v. Herman & MacLean*, 640 F.2d 534, 555 (5th Cir. 1981), *rev'd on other grounds*, 459 U.S. 375 (1983) ("the rescissional measure" could unjustly "compensate[] an investor for the nonspecific risks which he assumes by entering the market").

[56]    28 U.S.C. § 1367(c)(3).

-15-

economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state law claims."[57]

I see no reason to depart from this general rule. The parties have conducted substantial discovery and this Court has decided a motion to dismiss as well as the present summary judgment motion.[58] But this case has not yet reached trial, and declining to exercise supplemental jurisdiction is not unfair to the parties because the discovery already obtained will undoubtedly be used in a state court proceeding.[59] Thus, the balance of relevant factors (especially comity to the court system of a sovereign state) tilts in favor of allowing a New York court to adjudicate issues of New York law.[60]

---

[57] *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, n.7 (1987) (citations omitted).

[58] Magistrate Judge Michael H. Dolinger also issued an opinion concerning a privilege waiver issue. *See JSMS Rural LP v. GMG Capital Partners III, LP*, No. 04 Civ. 8591, 2006 WL 1520087 (S.D.N.Y. June 1, 2006).

[59] *See Buntin v. City of New York*, 395 F. Supp. 2d 104, 109 (S.D.N.Y. 2004) (quoting *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994)) (declining to exercise supplemental jurisdiction when, inter alia, "deferral [to the state court] would not be unfair to the litigants because there is no evidence that they have expended [] significant 'time, effort, and money in preparing dependent claims.' . . . [because plaintiff's] state law claim is based on the same underlying facts as his federal claims, there could have been no discovery that related exclusively to the state law claim.").

[60] *See, e.g., Grunberg v. Board of Educ. for the City Sch. Dist. of N.Y.*, No. CV-04-4124, 2006 WL 845389, at *10 (E.D.N.Y. Mar. 30, 2006) (declining to

## V. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment with regard to plaintiff's federal securities fraud claim is granted. I decline to exercise supplemental jurisdiction over the remaining state-law causes of action. The Clerk of the Court is directed to close this motion [number 34 on the docket sheet] and this case.[61]

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:  New York, New York
        July 5, 2006

---

exercise supplemental jurisdiction after granting summary judgment to defendant on federal claim); *cf. Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) (affirming district court's exercise of supplemental jurisdiction over remaining state law claims after extensive proceedings, including a trial and remand from appellate court, but noting that district court would have been equally justified in *declining* supplemental jurisdiction).

[61] The PSLRA requires me to evaluate the compliance of each party and each attorney with Rule 11(b) of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(c)(1). After reviewing the record in this case, I find that all parties and all attorneys complied with Rule 11(b).

-17-

## - Appearances -

**For Plaintiff:**

Jeffrey Boxer, Esq.
CARTER LEDYARD & MILBURN LLP
Two Wall Street
New York, New York 10005
(212) 732-3200

**For Defendants:**

Kyle Bisceglie, Esq.
BARTON BARTON & PLOTKIN LLP
420 Lexington Avenue
New York, New York 10170
(212) 687-6262