USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/4/06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

JSMS RURAL LP,

                  Plaintiff,

-against-

GMG CAPITAL PARTNERS III, LP, and
GMG CAPITAL INVESTMENTS, LLC,

                  Defendants.

------------------------------------------------------X

**MEMORANDUM OPINION AND ORDER**

04 Civ. 8591 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

On July 5, 2006, I granted summary judgment in favor of defendants GMG Capital Partners III LP (the "Partnership") and GMG Capital Investments LLC (collectively, "defendants") as to claims brought by plaintiff JSMS Rural LP ("JSMS") that defendants violated section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission.[1] I also declined to exercise supplemental jurisdiction over plaintiff's remaining claims brought under New York law. I assume familiarity with the July 5 Opinion, the factual record submitted as part of the summary judgment motion, and the procedural history of this case.

---

[1] *See generally JSMS Rural, LP v. GMG Capital Partners III, LP*, No. 04 Civ. 8591, 2006 WL 1867482 (S.D.N.Y. July 5, 2006) ("July 5 Opinion").

-1-

In the July 5 Opinion, I concluded that plaintiff failed to create a triable issue of fact as to loss causation or economic loss, both essential elements of its federal securities fraud claim, because "the record is devoid of evidence that the value of JSMS' partnership interest has actually declined, whether as a result of defendants' alleged conduct or otherwise."[2] Plaintiff now moves for reconsideration of this conclusion. Plaintiff's motion is denied.

Motions for reconsideration are governed by Local Rule 6.3, which should be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court."[3] A motion for reconsideration "is not a substitute for appeal."[4] Reconsideration is appropriate where "the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."[5]

---

[2] *Id.* at *3.

[3] *DGM Invs., Inc. v. New York Futures Exch., Inc.*, 288 F. Supp. 2d 519, 523 (S.D.N.Y. 2003) (quotation omitted).

[4] *LaSala v. Needham & Co.*, No. 04 Civ. 9237, 2006 WL 1206241, at *3 (S.D.N.Y. May 2, 2006) (quotation and citation omitted).

[5] *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003) (quotation and citation omitted). "A motion for reconsideration may also be granted to 'correct a clear error or prevent manifest injustice.'" *In re Terrorist Attacks on September 11, 2001*, No. 03 MDL 1570, 2006 WL 708149, at *1 (S.D.N.Y. Mar. 20, 2006)

Of particular relevance here, the purpose of Local Rule 6.3 is to "'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'"[6] Here, JSMS is engaging in just such conduct. It has examined the July 5 Opinion and is attempting to plug the gaps in its earlier efforts by submitting arguments and evidence that were not before the Court the first time around.

JSMS originally addressed the question of whether it could show loss causation by *first*, asserting that it did not have to show a loss at all because it desired rescission instead of money damages; and *second*, by asserting that its investment was now "worthless," in part because it was not allowed to transfer its Partnership interest.[7] I rejected both arguments.

Plaintiff has now essentially abandoned these contentions and instead puts forward excerpts from five of the Partnership's investment summaries in

---

(quoting *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)).

[6]    *Naiman v. New York Univ. Hosps. Ctr.*, No. 95 Civ. 6469, 2005 WL 926904, at *1 (S.D.N.Y. Apr. 1, 2005) (quoting *Carolco Pictures, Inc. v. Sirota*, 700 F. Supp. 169, 170 (S.D.N.Y. 1988)).

[7]    *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 at 14-18, 18 n.9, 22.

order to show that JSMS has in fact suffered an economic loss.[8] Only one of these five documents (the 12/31 Schedule) was submitted to the Court as part of the summary judgment motion I decided.[9] But defendants produced all of these documents in discovery well in advance of the briefing on their summary judgment motion.[10] Thus, if these documents were crucial to plaintiff's case, *plaintiff* should have submitted them to the Court.[11]

---

[8] The documents in question are: the Partnership's "Summary of Investments" for the Fourth Quarter of 2003 ("Q4 2003 Summary"), Exhibit A to to Plaintiff's Memorandum of Law in Support of Its Motion For Reconsideration Pursuant to Local Civil Rule 6.3 ("Pl. Mem."); a "Summary of Investments" for the First Quarter of 2004 ("Q1 2004 Summary"), Ex. A to Pl. Mem.; the Partnership's "Schedule of Portfolio Investments" as of December 31, 2002 ("12/31 Schedule"), Ex. B to Pl. Mem.; the Partnership's "Fund Summaries" for the First Quarter 2005 ("Q1 2005 Summary"), Ex. C to Pl. Mem.; and the Partnership's "Fund Summaries" for the Third Quarter of 2005 ("Q3 2005 Summary"), Ex. C. to Pl. Mem.

[9] The Q4 2003 and Q1 2004 Summaries, Exhibit A to plaintiff's motion for reconsideration, were originally submitted as exhibits to defendants' summary judgment motion papers. However, because both parties violated my Individual Rules concerning the number of exhibits that may be submitted on a summary judgment motion, I ordered that the relevant papers be resubmitted. The present Exhibit A was omitted by defendants when they resubmitted their papers. As I would deny plaintiff's reconsideration motion in any case, I need not decide whether Exhibit A should fairly be considered impermissible "new" material for purposes of a reconsideration motion.

[10] *See* 7/28/06 Declaration of Kyle C. Bisceglie, counsel for defendants, ¶¶ 2-8.

[11] Plaintiff's assertion that these documents are part of the "case record," because they were produced in discovery, *see* Plaintiff's Reply

In sum, it would be unfair to allow the losing party to "move the goalposts" on the prevailing party by re-litigating the lost motion with new evidence and arguments.[12] For this reason alone, plaintiff's motion for reconsideration must be denied. Plaintiff's recourse, if any, lies either with the United States Court of Appeals for the Second Circuit, or in pursuing its state law claims in the New York courts, an option left open by the July 5 Opinion.[13] I will, however, briefly address the merits of plaintiff's motion, if only to clarify my

---

Memorandum of Law in Further Support of Its Motion for Reconsideration Pursuant to Local Civil Rule 6.3 ("Reply Mem.") at 1, is a red herring. Federal Rule of Civil Procedure 56(e) requires a party opposing summary judgment to "set forth specific facts showing that there is a genuine issue for trial," and to support these assertions by pointing to specific evidence. *Accord* Local Rule 56.1(b), (d) (requiring a party opposing summary judgment to *first*, clearly and concisely assert material facts; and *second*, support such assertions with citation to admissible evidence). No doubt the parties exchanged a multitude of documents during fact discovery – but once motion practice begins, each party has a right to know which of those documents the other party considers to be relevant to the motion.

[12] *See Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (reconsideration motion should be denied when movant "seeks solely to re-litigate an issue already decided"); *see also Siemens Westinghouse Power Corp. v. Dick Corp.*, 219 F.R.D. 552, 554 (S.D.N.Y. 2004) (internal quotation and citation omitted) ("parties ought to be held to the requirement that they present their strongest case for summary judgment when the matter is first raised").

[13] *See, e.g., Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 59-60 (2d Cir. 2004) (citation omitted) (claims over which a federal court declines to exercise supplemental jurisdiction are dismissed without prejudice to their refiling in state court).

-5-

earlier Opinion.

JSMS now points to the quarterly investment summaries as proof that, "[a]ccording to the Partnership's own valuation, the value of the Partnership's portfolio shares other than Alloptic declined even after taking into account [gains realized by a certain Partnership investment]."[14] But even if JSMS has now established that it has lost money on its investment, it still has not shown that it suffered a loss *caused by the alleged fraud.*

*First*, four of the five investment summaries, as plaintiff admits, are offered to show that the Partnership's value (and thus, plaintiff's investment) declined because the stated value of companies *other than* Alloptic declined.[15] But every misrepresentation alleged by JSMS related to Alloptic, which is only one of several unrelated companies in which the Partnership holds a stake.[16] Thus, these documents cannot establish a triable issue of fact as to loss causation because they do not indicate a link between JSMS' loss and the misrepresentations

---

[14] Pl. Mem. at 2.

[15] *See* Q4 2003 Summary (Alloptic valued at one hundred percent of Partnership's original investment, while the value of the Partnership's holdings as a whole declined); Q1 2004 Summary (same); 12/31 Schedule (same); Q1 2005 Summary (same).

[16] *See JSMS Rural LP*, 2006 WL 1867482, at *2 (citation omitted).

concerning *Alloptic*.[17] For that matter, if the value of JSMS' investment declined at a time when defendants were still representing that the value of its Alloptic investment had *not* declined, such evidence tends to *negate* the inference that the Alloptic misrepresentations caused plaintiff's loss.[18]

More generally, JSMS labors under the misapprehension that evidence of its financial loss, without more, establishes its right to a trial on its securities fraud claim. Plaintiff dwells on the fact that "gains in the Partnership's other stocks could not and did not offset the losses resulting from the Partnership's overvaluation of its Alloptic stock."[19] But although I noted the absence of evidence that JSMS suffered any loss, I did so mainly in the course of responding to plaintiff's assertion that its Partnership interest is worthless, and in order to

---

[17] *See, e.g., Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005) (internal quotation and citation omitted) ("to establish loss causation, a plaintiff must allege that the subject of the fraudulent statement or omission was the cause of the actual loss suffered, i.e., that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security. Otherwise, the loss in question was not foreseeable.").

[18] *Cf. In re eSpeed, Inc. Sec. Litig.*, No. 05 Civ. 2091, 2006 WL 880045, at *17 (S.D.N.Y. Apr. 3, 2005) (quoting *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2005 WL 375314, at *6 (S.D.N.Y. Feb. 17, 2005)) ("it is axiomatic that '[a] concealed fact cannot cause a decrease in the value of a stock before the concealment is made public.'").

[19] Pl. Mem. at 1.

warn that JSMS must establish its damages with "'reasonable certainty'" to the extent that its Partnership interest gained value *despite* the fraud.[20] As the July 5 Opinion clearly explained, economic loss and loss causation must *both* be shown as part of a 10b-5 claim.[21] Thus, many of plaintiff's present arguments, as well as its accusation that defendants' counsel withheld material facts from the Court, are beside the point.[22] While the Court understands that JSMS is now unhappy with

---

[20] *JSMS Rural LP*, 2006 WL 1867482, at *3 (quoting *Commercial Union Assurance Co. v. Milken*, 17 F.3d 608, 614-15 (2d Cir. 1994)).

[21] *See id.* at *3-4 (citation omitted).

[22] *See* Pl. Mem. at 2 (noting that the Partnership's stated value declined by $51 million as of March 2005, but at the same time admitting that *Alloptic's* stated value was still artificially inflated at that point); *id.* at 3 (complaining about Partnership losses caused by Portfolio Companies *other than* Alloptic); *id.* at 4-5 (same, and complaining that defendants did not disclose these irrelevant losses to the Court); *see also* Reply Mem. at 1-2 (same); *id.* at 3 (asserting that new evidence contradicts finding that there is no evidence of economic loss, but not addressing the absence of loss *causation*); *id.* at 4 (incorrectly asserting that "even assuming that Plaintiff is unable to tie Defendants' [misrepresentations] to GMG's other investments . . . this question [only] relates to whether Plaintiff is entitled to rescission").

It is also irrelevant that defendants have been accused of securities fraud by a different investor in another jurisdiction. *See* Pl. Mem. at 3 (citation omitted) ("the market was aware that the Partnership had committed securities fraud as demonstrated by the fact that other investors . . . have also sued the Partnership"). If the filing of such lawsuits, by itself, had any probative value, courts could never properly dismiss consolidated securities fraud actions. The existence of such a consolidated action, after all, represents the opinions of *many* different plaintiffs that they have been defrauded by the same defendant.

its investment, Rule 10b-5 is not a "'partial downside insurance policy'" for disgruntled investors.[23]

*Second*, the only evidence now relied on by JSMS indicating that the value of Alloptic and of the Partnership fell contemporaneously is the **Q3 2005** Summary, which purports to show a substantial loss in the Partnership's Alloptic stake, as well as the Partnership's value as a whole. This document might show that the value of JSMS' investment fell when the "truth" about Alloptic (its vastly diminished book value) was revealed. But this newly-submitted evidence does not create a triable fact issue because JSMS *itself* has previously contended that the "truth" regarding Alloptic was revealed by the Partnership's **2002** audited financial statement, which was released to plaintiff in **July 2004**.[24]

Illustrating why Local Rule 6.3 should be strictly applied, plaintiff now *ignores* this audited financial statement, and instead implies that the truth

---

[23] *JSMS Rural LP*, 2006 WL 1867482, at *4 (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 348 (2005)).

[24] *See* Second Amended Complaint ¶ 31 ("Once the 2002 audited financial statements for the Partnership . . . [was] finally released [to JSMS] in **[July] 2004**, it became apparent that defendants had materially overstated the past performance of Alloptic"); *see also JSMS Rural LP*, 2006 WL 1867482, at *3 n.42 (construing evidence in light most favorable to non-movant and concluding that audited financial statement might help establish a connection between the alleged misrepresentations and an economic loss).

-9-

regarding Alloptic's value was not revealed until late 2005, almost a year after this lawsuit was filed.[25] But if the true value of Alloptic was revealed to the Partnership investors in *July 2004* (as plaintiff has previously asserted), a reasonable factfinder could not conclude that any loss of value of the Partnership resulting from such a disclosure would fail to manifest itself until September 2005.[26] For these reasons, plaintiff provides no basis for reconsideration of the July 5 Opinion.

I recognize that plaintiff's task in creating a triable fact issue as to its economic loss proximately caused by defendants' alleged misstatements is relatively difficult in this case. Plaintiff's Partnership interest has no "market value" as such – as plaintiff was told at the time it invested, Partnership shares are illiquid and cannot be sold without defendants' consent.[27] Moreover, as plaintiff's

---

[25] *See* Pl. Mem. at 2-3 ("[b]y September 30, 2005, the Partnership advised its partners that [its] Alloptic shares had declined in value [by 89%]").

[26] In fact, any loss attributable to the alleged fraud must have occurred prior to October 29, 2004, the date on which the original Complaint in this action was filed. If this were not the case, plaintiff could not have alleged (consistent with Rule 11) that "[a]s a direct and proximate result of the defendants' wrongful conduct, JSMS suffered damages in an amount to be determined at trial." Complaint ¶ 54. *Accord* Second Amended Complaint ¶ 74 (same).

[27] *See JSMS Rural LP*, 2006 WL 1867482, at **1 n.17, 2 (citing the Private Placement Memorandum plaintiff reviewed before investing).

-10-

counsel acknowledged at a conference in this case, any loss to JSMS at this point would only be a "book loss"[28] until the Partnership enters its liquidation phase, at which point the financial gain or loss to investors will be definitively determined.[29]

In light of the foregoing, defendants may be correct that "it is difficult to imagine how JSMS could establish with any degree of certainty the portion of [its loss] attributable to the alleged misrepresentations about Alloptic, without providing expert testimony on that issue."[30] This difficulty in establishing loss causation certainly does not license defendants to violate Rule 10b-5 with

---

[28] January 27, 2006 Transcript of Proceedings ("1/27 Tr.") at 14 (Jeffrey Boxer, counsel for plaintiff).

[29] *See* 5/28/04 Letter from Joachim Gfoeller, Jr., on behalf of the Partnership, to limited partners at 4, Ex. J to 5/2/06 Declaration of Kyle C. Bisceglie ("As you know, the partnership is in the business expansion phase of its efforts. We expect to enter the liquidation phase within the next 24 months"). This answers plaintiff's rhetorical question, "How long does plaintiff have to wait before Defendants will admit that Plaintiff has suffered a loss?" Reply Mem. at 5. Although I construed the facts in the light most favorable to plaintiff on the summary judgment motion, *see JSMS Rural LP*, 2006 WL 1867482, at *1 n.9 (citing *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006)), it could be that, given the terms under which JSMS agreed to invest, JSMS has not yet suffered a cognizable loss at all. *See* 1/27 Tr. at 14 (the Court, suggesting that "[plaintiff] went into this knowing that the book loss is no loss and you can't get out [of the investment]. [Plaintiff] is a sophisticated investor going into a limited partnership. I'm not sure there is a realizable loss, so you might have to drop the securities claim and go with the common law misrepresentation claim.").

[30] Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Reconsideration Pursuant to Local Civil Rule 6.3 at 9.

impunity, but it is *plaintiff's* burden to make its own case. And the bottom line is that plaintiff has provided no basis for a reasonable factfinder to conclude that, out of the myriad of factors that could affect the value of its investment at any given time, it was the alleged misrepresentations concerning Alloptic that caused any loss suffered by JSMS. Without such evidence, plaintiff's securities fraud claim cannot proceed to trial.

For the foregoing reasons, plaintiff's motion for reconsideration is denied. However, the discussion contained in this Opinion supplements and clarifies my July 5, 2006 Opinion with respect to its discussion of loss causation.[31] The Clerk of the Court is directed to close this motion [number 65 on the docket sheet].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
August 4, 2006

---

[31] I also clarify for the record that plaintiff's state law claims, over which I declined to exercise supplemental jurisdiction, are dismissed without prejudice to their refiling in state court. *Cf. Mormol*, 364 F.3d at 60 (remanding to district court for the sole purpose of making such a clarification).

## - Appearances -

**For Plaintiff:**

Alan J. Garfunkel, Esq.
LAW OFFICES OF ALAN J. GARFUNKEL LLC
477 Madison Avenue, 21st Floor
New York, New York 10022
(212) 888-7300

**For Defendants:**

Kyle Bisceglie, Esq.
BARTON BARTON & PLOTKIN LLP
420 Lexington Avenue
New York, New York 10170
(212) 687-6262